WALTER KENNEY, RESPONDENT, v. MARCUS FREIDEL, AND SUN OIL COMPANY, APPELLANTS.

Submitted October 7, 1941—Decided December 19, 1941.

Before Justices PARKER, DONGES and COLIE.

For the appellant Freidel, *John F. Ryan*.

For the appellant Sun Oil Company, *Harvey G. Stevenson*.

For the respondent, *I. Arthur Levy*.

The opinion of the court was delivered by

PARKER, J. The plaintiff, passing along a public sidewalk after eleven o'clock at night, slipped and fell because of the presence of some oil on the sidewalk. As the trial court, sitting without jury, was entitled to find, the oil had come from what was described as a "slop oil tank" on the abutting premises of the Oil Company, which were a service station undergoing some reconstruction under contract with defendant Freidel. According to the testimony, the tank was twelve feet long and three feet in diameter, and presumably cylindrical. Its proper place for use was underground, but the alterations apparently required it to be moved, so it had been brought to the surface and placed on a low pile of dirt, ten or twelve inches high, which had covered it when formerly in place, and shored up to prevent rolling. This was on the Oil Company premises and entirely off the street. There were three openings in the tank, evidently for the entrance and exit of its contents; and according to the uncontradicted and unimpeached evidence, when the tank was raised, it was drained of all oil except three or four gallons, and placed on the said pile of dirt with all openings up, and capped, to prevent possible leakage. These conditions persisted for about two weeks, until the night of the accident. The working gang left about 4:30 P. M. leaving everything in order. The service station closed at 11:00 P. M., and there was no evidence that at that time any change in condition had taken place. Defendant Freidel testified that he found the tank the next day with the caps off, and turned so that the openings were at the bottom instead of the top. There was nothing to show how the tank had been turned over or how the caps had been taken off, except that the manager of the

station testified that there had been children playing around the tank during the day, and that he had chased them away; that at eleven o'clock, when he left, there was no oil on the sidewalk.

We can see nothing in the case to charge either defendant. As to the Oil Company, the entire work was entrusted to an independent contractor, and the evidence is plain and undisputed that when that contractor quit for the day, all was in good order, the tank on its bed of dirt, shored up to prevent rolling, and with the caps on the three openings. How the tank had been rolled over, and how the caps had come off, and what had become of them, all this must be left to the imagination, as there was no proof, and nothing on which to found a legitimate inference. If it be deemed possible that mischievous children had succeeded in reversing in place a metal tank of the dimensions stated, and presumably weighing some hundreds of pounds, and removing the metal caps, this was the act of an outside agency, and moreover of trespassers, for whose acts neither owner nor contractor would be liable, unless one or the other, or both, had created a situation fraught with probable danger.

We can see no conditions pointing to liability of either appellant in this case: and the judgment is accordingly reversed, and the record remanded to the trial court for further proceedings therein.